IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.

MERRILL LYNCH, PIERCE, FENNER,
& SMITH INCORPORATED,

               Plaintiff,

   v.

JUAN CARLOS COLLAR and
ANTHONY FERNANDEZ

               Defendants.

_____/

**05 - 20282**

**CIV - LENARD**

MAGISTRATE JUDGE
SIMONTON

## COMPLAINT

    Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), by its

undersigned attorneys, hereby brings the following Complaint for injunctive relief

against Juan Carlos Collar ("Collar") and Anthony Fernandez ("Fernandez") (collectively

the "Defendants") for: (I) breach of contract; (ii) misappropriation of trade secrets; (iii)

breach of fiduciary duty; and (iv) unfair competition, and in support thereof avers as

follows:

### I. PARTIES

    1.     Merrill Lynch is a Delaware corporation maintaining its principal place of

business at World Financial Center, North Tower, New York, New York and transacting

business in this judicial district at Merrill Lynch's offices at 200 S. Biscayne Blvd., Suite

4500, Miami, Florida 33131.

    2.     Merrill Lynch is a citizen of the States of Delaware and New York.

3.     Defendants are former financial advisors and employees of Merrill Lynch's Miami Biscayne office, located at the above address.

## II.  JURISDICTION AND VENUE

4.     Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. § 1332. The amount in controversy exceeds Seventy-five Thousand Dollars ($75,000), exclusive of interest and costs.  Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65(a).  Venue is proper in this judicial district under 28 U.S.C. § 1391(a), as it is the district in which the conduct complained of arose.

## III.  THE FACTS

5.     Merrill Lynch is engaged in the business of, inter alia, providing financial services.

6.     Collar commenced his employment with Merrill Lynch in or about May 8, 1995.  Fernandez commenced his employment with Merrill Lynch in or about December 1, 1997.

7.     As Financial Advisors with Merrill Lynch, each Defendant executed an employment agreement known as a Financial Consultant Employment Agreement and Restrictive Covenants (the "Agreement").  Copies of Defendants' Agreements are attached hereto as Exhibits "**A**" and "**B**."

8.     In pertinent part, the terms, conditions and provisions of Defendants' Agreements provided that Merrill Lynch agreed to:

(a)     employ Defendants in a sales capacity for a sales position;

(b)     pay Defendants while they were trained and employed in said sales capacity;

©) provide Defendants with opportunities, support services, and facilities; and

(d) provide other good and valuable consideration.

9. Merrill Lynch provided the above consideration to Defendants and has satisfied all conditions precedent.

10. More specifically, Merrill Lynch compensated Defendants at all times during their employment with Merrill Lynch, provided them with intensive introductory training and/or continuous on-the-job training throughout their employment with Merrill Lynch as financial advisors, provided them with extensive support services, paid for facilities, computer equipment, market reporting services, and all other business expenses, provided them with abundant sales opportunities, registered Defendants with the New York Stock Exchange, National Association of Securities Dealers, the American Stock Exchange, and the Florida state securities commission, and provided them with all Merrill Lynch benefits, systems, resources and support at all times.

11. In addition to the foregoing, Merrill Lynch provided Defendants with office facilities, secretarial services, clearing services, operational systems, product inventory, sales assistants, research, the benefit of Merrill Lynch advertising, goodwill and name recognition, access and use of experts in asset management, tax, estate planning and insurance, and promotional marketing and sales support.

12. In addition to the foregoing, Merrill Lynch provided Defendants with customer accounts, customer referrals, reassignments of former and current Merrill Lynch accounts, customer leads and new accounts generated by Merrill Lynch's national advertising campaign, from local seminars, from mailers, from "walk-in" and "call-in"

customers, and from lists purchased and acquired by Merrill Lynch, and access and use of confidential records relating to these accounts.

13.     By virtue of Defendants' employment at Merrill Lynch, they gained access to the books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets, net worth, investment histories, and the securities held by these customers in their Merrill Lynch accounts.

14.     As a result of the foregoing, Defendants specifically acquired information and records that revealed the names and addresses and confidential information for hundreds of Merrill Lynch accounts, representing over **$108 million** in assets under Merrill Lynch management.  These accounts generated over **$993,000** in commission revenues for Merrill Lynch in the past twelve months alone.

15.     In consideration of and in exchange for the foregoing benefits and opportunities provided by Merrill Lynch, Defendants agreed in their <u>Financial Consultant Employment Agreements and Restrictive Covenants</u> that:

> 1.     **<u>All records</u>, whether original, duplicated, computerized, memorized, handwritten, or in any other form, <u>and all information</u> contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch.**  This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch.  I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch.  **I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this**

4

**information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.**

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

2. **If, at any time, I resign from Merrill Lynch**, provoke my termination, or am terminated for cause, **I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means,** either directly or indirectly, **any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity.** My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a)    to transfer from Merrill Lynch to me or to my new employer, or

(b)    to open a new account with me or with my new employer, or

©)    to otherwise discontinue its patronage and business relationship with Merrill Lynch.

(Exhibits **"A"** and **"B"** attached hereto at ¶¶ 1 and 2) (emphasis added).

16.    In their <u>Financial Consultant Employment Agreements and Restrictive</u>

<u>Covenants</u>, Defendants also expressly consented to the issuance of a temporary

5

restraining order and a preliminary injunction by this Court:

> **4.    In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief.**   I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo.  Therefore, **I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:**
>
> **(a)    that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and**
>
> **(b)    that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and**
>
> ©)    that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.
>
> 5.  For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch.   This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.

(Exhibits **"A"** and **"B"** attached hereto at ¶¶ 4-5) (emphasis added).

17.    Defendants also agreed, on an annual basis, to abide by Merrill Lynch's

<u>Compliance Outline for Private Client Financial Advisors</u>, which provides, in pertinent

part, as follows:

6

## PRIVACY POLICY - CONFIDENTIALITY OF CLIENT INFORMATION

Merrill Lynch protects the confidentiality and security of client information. Employees must understand the need for the careful handling of this information. Merrill Lynch's privacy policy provides that

- We do not sell or rent clients' personal information.
- Employees may not discuss the business affairs of any client with any other employee, except on a strict need-to-know basis.
- We do not release client information, except upon a client's authorization or when required by law.
- Third-party service providers with access to client information are subject to the Merrill Lynch Privacy Policy.

Questions concerning the confidentiality or security of client information should be directed to your manager, Compliance Officer, or the Office of General Counsel.

(Exhibit **"C"** attached hereto) (emphasis added).

18.     Furthermore, Defendants also agreed as a condition of their employment

to abide by Merrill Lynch's <u>Conflict of Interest</u> agreement, which provides:

I agree that **I will not, during or after my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch.**

\* \* \*

I have read and <u>agree</u> to abide by this statement of Merrill Lynch & Co. policy. <u>I also understand completion of this form is a condition of employment</u>.

(Exhibit **"D"** attached hereto) (emphasis added).

19.     Additionally, as a condition of their employment with Merrill Lynch,

Defendants agreed to abide by Merrill Lynch's <u>Guidelines for Business Conduct</u>, which

provide, in relevant part, as follows:

7

Merrill Lynch's assets include more than capital; they also include its facilities, equipment, **information**, technology, business plans, ideas for new products and services, **trade secrets**, inventions, copyrightable materials, and **client lists**. It is critical that all employees safeguard such assets in accordance with corporate policies. Employees are expected to use company assets only for the purposes intended -- never for their own personal benefit, except when particular assets are approved for general employee or public use. This policy extends even to business opportunities that come to employees as a result of their employment. These are considered proprietary opportunities belonging to Merrill Lynch. Employees should be aware that state and federal laws, regulatory controls, and contractual and licensing obligations for such assets govern our actions as well as the actions of the company's vendors and consultants.

\* \* \*

The policies on inside information are not limited to the securities area. All employees must exercise equal care not to misuse any non-public corporate information, **including client lists**, information about Merrill Lynch personnel, and business plans and ideas.

(Exhibit **"E"** attached hereto)(emphasis added).

20.     Defendants resigned from Merrill Lynch, <u>without advance notice</u>, on Friday, January 28, 2005, and immediately joined a competing securities industry firm located nearby.

21.     Merrill Lynch believes and therefore avers that Defendants have wrongfully converted Merrill Lynch records and are secretly attempting to divert Merrill Lynch customers to their new employer.

22.     Merrill Lynch believes and therefore avers that Defendants have prepared to engage in, have engaged in, and continue to engage in, <u>inter alia</u>, the following acts:

(a)     transmitting verbally, in writing, or in some other manner, to their

new employer and/or others, the clients' names, addresses, and other confidential information contained in the records of Merrill Lynch;

(b)     soliciting and/or preparing to solicit Merrill Lynch's clients to terminate their relationship with Merrill Lynch and transfer their accounts to their new employer; and

©)     other such acts contrary to the terms, conditions, and provisions of their <u>Financial Consultant Employment Agreements and Restrictive Covenants</u>, and other Merrill Lynch policies and guidelines.

23.     Defendants' conduct represents an attempt to obtain and to convert to their personal use and gain the records of Merrill Lynch, the property of Merrill Lynch, the names, addresses and confidential customer information used to conduct business at Merrill Lynch, Merrill Lynch marketing and promotional techniques, and the goodwill generated, directly and indirectly, by Defendants' association with Merrill Lynch, and to do so by means of, <u>inter alia</u>, solicitation of the Merrill Lynch clients serviced by Defendants and whose names became known to them while in the employ of Merrill Lynch.

Merrill Lynch believes and, therefore, avers that:

(a)     Defendants have possession, custody, or control of Merrill Lynch records, Merrill Lynch documents, confidential customer information, Merrill Lynch proprietary information, and lists of Merrill Lynch customer accounts and account information for customers, including names, addresses, telephone numbers and special investment information of said Merrill Lynch customers;

9

(b)     Defendants have used, and will continue to use, this information to solicit Merrill Lynch accounts and to divert the business of Merrill Lynch customers from Merrill Lynch to their new employer; and

©)     Defendants will otherwise continue to engage in acts constituting a breach of the terms of their Merrill Lynch contracts and Merrill Lynch policies, and other tortious conduct, including breach of fiduciary duty and unfair competition.

## COUNT I

## INJUNCTIVE RELIEF

24.     The averments of Paragraphs 1 through 23 are incorporated by reference herein with the same force and effect as if set forth in full below.

25.     By virtue of the foregoing, Merrill Lynch has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendants.

26.     Unless Defendants are temporarily and/or preliminarily enjoined from the foregoing conduct, Merrill Lynch will be irreparably harmed by:

a)     Disclosure of customer lists and other confidential information that are solely the property of Merrill Lynch and its clients;

b)     Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

c)     Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

10

d)      Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

27.      Merrill Lynch has no adequate remedy at law.

WHEREFORE, Merrill Lynch respectfully requests that:

1.      A Temporary Restraining Order and/or a Preliminary Injunction issue immediately, enjoining Defendants, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of their new employer, until hearing and thereafter until further Order of this Court, from:

a)      soliciting or otherwise initiating any further contact or communication with any client of Merrill Lynch whom Defendants served or whose name became known to Defendants while in the employ of Merrill Lynch for the purpose of advising said clients of their new affiliation or for the purpose of inviting, encouraging or requesting the transfer of any accounts or business patronage from Merrill Lynch (excluding Defendants' family and relatives);

b)      soliciting or otherwise initiating any further contact or communication  with any client of Merrill Lynch whose records or information Defendants misappropriated and/or used in violation of paragraph 1 of their Agreements.  This specifically includes any client whom Defendants may have contacted by mail, phone or otherwise through the use of any information obtained by Defendants while in the employ of Merrill Lynch (excluding Defendants' family and relatives);

c)      using, disclosing, or transmitting for any purpose, including

11

solicitation of said clients, the information contained in the records of

Merrill Lynch or concerning its clients, including, but not limited to, the

names, addresses, and financial information of said clients; and

d)      destroying, erasing, or otherwise making unavailable for further

proceedings in this matter, or in any arbitration proceeding between the

parties, any records or documents (including data or information

maintained in computer media) in Defendants' possession or control

which were obtained from or contain information derived from any

Merrill Lynch records, which pertain to Merrill Lynch clients whom

Defendants served or whose names became known to Defendants while

employed by Merrill Lynch, or which relate to any of the events alleged in

the Complaint in this action; and

e)      any and all other such acts as this Court deems appropriate for

injunctive relief.

## COUNT II

## BREACH OF CONTRACT

28.     The allegations of Paragraphs 1 through 27 are incorporated herein by

reference with the same force and effect as if set forth in full below.

29.     Defendants have violated and are continuing to violate, <u>inter alia</u>,

paragraphs 1-2 of their <u>Financial Consultant Employment Agreements and Restrictive

Covenants</u> with Merrill Lynch, (Exhibits **"A"** and **"B"**) as well as the other Merrill

Lynch agreements by which they agreed to abide (Exhibits **"C"- "E"**).

30.     As a consequence of the foregoing, Merrill Lynch has suffered and will

continue to suffer irreparable harm and loss.

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS

31.    The allegations of Paragraphs 1 through 30 are incorporated herein by reference with the same force and effect as if set forth in full below.

32.    The books and records of Merrill Lynch, the confidential information contained therein, and especially the identity of Merrill Lynch customers, including their names and addresses, financial statements, investment objectives, assets and/or securities held by these customers in their Merrill Lynch accounts and other financial information, are trade secrets of Merrill Lynch subject to protection under Florida law.

33.    Merrill Lynch's customer information is a compilation of information used in Merrill Lynch's business, which gives Merrill Lynch an opportunity to obtain a competitive advantage over other competitors who do not know or have access to the contents of this customer list, and additional customer related information.

34.    Merrill Lynch has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including by having Defendants and other employees enter into the agreements described above prohibiting, inter alia, the use and disclosure of such information outside of Merrill Lynch.

35.    Defendants are presently misusing Merrill Lynch's confidential customer information in furtherance of their employment with a direct Merrill Lynch competitor and in violation of their contractual agreements not to do so.

36.    The foregoing conduct of Defendants constitutes a misappropriation and misuse of Merrill Lynch's confidential, trade secret information in violation of Florida

13

Law. See Fla. Stats. §812.081 and §688.002.

37.     As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV

## BREACH OF FIDUCIARY DUTY

38.     The allegations of Paragraphs 1 through 37 are incorporated herein by reference with the same force and effect as if set forth in full below.

39.     Defendants have violated the common law fiduciary duty of loyalty and the fiduciary duty arising under their employment contracts and relationship with Merrill Lynch in that, while employed by Merrill Lynch, Defendants secretly planned to leave the employ of Merrill Lynch and schemed with others to deprive Merrill Lynch of its records and clients.

40.     As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

## COUNT V

## UNFAIR COMPETITION

41.     The allegations of Paragraphs 1 through 40 are incorporated herein by reference with the same force and effect as if set forth in full below.

42.     The foregoing conduct of Defendants constitutes an unfair method of competition.

43.     As a consequence of the foregoing, Merrill Lynch has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in Counts II, III,

IV, and V, Merrill Lynch demands judgment in its favor and against Defendants for

temporary and

preliminary injunctive relief pending arbitration to be held pursuant to Rule 10335(b) of

the National Association of Securities Dealers Code of Arbitration Procedure.

Respectfully submitted,

WALDMAN, FELUREN, HILDEBRANDT &
   TRIGOBOFF, P.A.
Counsel for Plaintiff Merrill Lynch,
Pierce, Fenner & Smith Incorporated
2200 North Commerce Parkway
Suite 202
Weston, Florida  33326
(954) 467-8600
(954) 467-6222 (fax)

By: _____
    DOUGLAS T. MARX
    Florida Bar No.  0089834

Of Counsel:

Joseph A. Dougherty, Esquire
RUBIN, FORTUNATO, HARBISON
& DOUGHERTY, P.C.
10 South Leopard Road
Paoli, PA  19301
(610) 408-2009
(610) 408-9080 (telecopy)

# EXHIBIT A

# FINANCIAL CONSULTANT
# EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS

In consideration of Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") employing me; compensating me; providing to me employment related benefits; training me; sponsoring me for the General Securities Examination; registering me with various exchanges; licensing me in various states; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; supervising the development of my career; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby agree that:

1.      All records, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

2.      If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

(a)     to transfer from Merrill Lynch to me or to my new employer, or

(b)     to open a new account with me or with my new employer, or

(c)     to otherwise discontinue its patronage and business relationship with Merrill Lynch.

TSJM

3.      I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith. I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4.      In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief. I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMI-NARY or PERMANENT INJUNCTION ordering:

> (a)      that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and

> (b)      that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and

> (c)      that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

> The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed at Merrill Lynch, in any office and in any capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, and etc. During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefiting from Merrill Lynch's goodwill, reputation, name recognition, and other assets and resources, I further agree that the Accounts of such Prior Acquaintances will be subject to the same restraints as all the other Accounts. The only exception will be my family and relatives.

5.      For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.

6.      If after issuance of a TEMPORARY RESTRAINING ORDER or a PRELIMINARY or PERMANENT INJUNCTION, the parties voluntarily agree, or are ordered, to arbi-trate a dispute arising out of this Agreement, each party agrees and demands that any such arbitration be conducted in strict compliance with the applicable written

*continued*

Rules of Arbitration, as published, amended, effective, and in force at the time of my termination. The parties further agree that any Order of the Court shall stay in full force and effect until a Panel of Arbitrators can be properly constituted in accordance with the above referenced written Rules of Arbitration and until said Panel renders a full and final decision.

7.     NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. MERRILL LYNCH MAY TERMINATE MY EMPLOYMENT FOR ANY REASON OR FOR NO REASON, JUST AS I MAY RESIGN AT ANY TIME.

8.     I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RE-STRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDER-STAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

Date: _____5/5/95_____          _____
                                     Financial Consultant Juan C. Collar

Date: _____7/8/95_____          _____
                                     For Merrill Lynch, Pierce,
                                     Fenner & Smith Inc.

# EXHIBIT B

# FINANCIAL CONSULTANT

# EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS

In consideration of Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") employing me; compensating me; providing to me employment related benefits; training me; sponsoring me for the General Securities Examination; registering me with various exchanges; licensing me in various states; providing me with office facilities and sales support; executing, processing and clearing transactions; providing research and investment recommendations; supervising the development of my career; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby agree that:

    1.    __All records__, whether original, duplicated, computerized, memorized, handwritten, or in any other form, __and all information__ contained therein, including names, addresses, phone numbers, and financial information of any account, customer, client, customer lead or prospect ("Account"), are confidential and are the sole and exclusive property of Merrill Lynch. This information, whether provided to me by Merrill Lynch or by any Account, is entrusted to me as an employee and sales representative of Merrill Lynch. I will not use this information or remove any such records from the Merrill Lynch office except for the sole purpose of conducting business on behalf of Merrill Lynch. I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Merrill Lynch either during my employment or at any time thereafter.

This information is extremely valuable to Merrill Lynch and Merrill Lynch takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside Merrill Lynch and within Merrill Lynch this information is confidential and used only on a "need to know" basis. This information is developed and acquired by great expenditures of time, effort, and money. This information is unique and cannot be lawfully duplicated or easily acquired. Consequently, I agree that these records and the information contained therein are the property of Merrill Lynch and are deserving of trade secret status and protection.

    2.    If, at any time, I resign from Merrill Lynch, provoke my termination, or am terminated for cause, I agree that for a period of one year following my termination I will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Merrill Lynch in any office and in any capacity. My agreement "not to solicit" means that I will not, during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:

    (a)    to transfer from Merrill Lynch to me or to my new employer, or

    (b)    to open a new account with me or with my new employer, or

    (c)    to otherwise discontinue its patronage and business relationship with Merrill Lynch.

3.      I agree that at all times during my employment I owe Merrill Lynch a duty of loyalty and a duty to act in good faith.  I agree that during my employment I will not individually, or in combination with any other employee or competitor of Merrill Lynch, violate or breach the terms of this agreement.

4.      In the event I breach any of the covenants of paragraphs 1, 2 or 3, I agree that Merrill Lynch will be entitled to injunctive relief.  I recognize that Merrill Lynch will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Merrill Lynch or to protect and preserve the status quo. Therefore, I CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER or A PRELIMINARY or PERMANENT INJUNCTION ordering:

> (a)      that I immediately return to Merrill Lynch all records whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that I be enjoined and restrained from using or disclosing any information contained in such records; and

> (b)      that, for a period of one year, I be enjoined and restrained from soliciting any Account whom I served or whose name became known to me while employed by Merrill Lynch, in any office and in any capacity; and

> (c)      that I be further enjoined and restrained, for a period of one year, from accepting business from any Account who was solicited in violation of paragraph 2 or whose records and information was used in violation of paragraph 1.

> The above restraints shall apply to each and every Account whom I served or whose name became known to me while employed at Merrill Lynch, in any office and in any capacity, including without limitation, reassignments, walk-ins, call-ins, write-ins, transfers, referrals, prospects, cold-calls, seminars, mailers, lead lists, and etc.  During my employment, some of the accounts I expect to develop and acquire are likely to be those of individuals I knew or was familiar with prior to joining Merrill Lynch ("Prior Acquaintances"). Nevertheless, because I will be acting as a representative of Merrill Lynch and I will be utilizing and benefiting from Merrill Lynch's goodwill, reputation, name recognition, and other assets and resources, I further agree that the Accounts of such Prior Acquaintances will be subject to the same restraints as all the other Accounts.  The only exception will be my family and relatives.

5.      For the purposes of paragraph 4, I agree to submit to, and confer exclusive jurisdiction on, the United States District Court or the State Court which has original jurisdiction for judicial district or county in which I last worked for Merrill Lynch. This Agreement shall be construed, governed by, and enforced in accordance with the laws of said jurisdiction.  Further, in the event I voluntarily resign my employment, I will take no action (either by court proceedings or otherwise), to inhibit in any way Merrill Lynch's rights under paragraph 4 herein.

*Continued*

6.      If after issuance of a TEMPORARY RESTRAINING ORDER or a PRELIMINARY or PERMANENT INJUNCTION, the parties voluntarily agree, or are ordered, to arbitrate a dispute arising out of this Agreement, each party agrees and demands that any such arbitration be conducted in strict compliance with the applicable written Rules of Arbitration, as published, amended, effective, and in force at the time of my termination. The parties further agree that any Order of the Court shall stay in full force and effect until a Panel of Arbitrators can be properly constituted in accordance with the above referenced written Rules of Arbitration and until said Panel renders a full and final decision.

7.      NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. MERRILL LYNCH MAY TERMINATE MY EMPLOYMENT FOR ANY REASON OR FOR NO REASON, JUST AS I MAY RESIGN AT ANY TIME.

8.      I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT AND RESTRICTIVE COVENANTS IN ITS ENTIRETY. I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MERRILL LYNCH QUESTIONS ABOUT IT. I HAVE ALSO BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF MY CHOICE. I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.

IN ADDITION TO THE FOREGOING, I UNDERSTAND THAT I HAVE AN ADDITIONAL THIRTY DAYS FROM THE DAY I SIGN THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. AT ANY TIME WITHIN THIS THIRTY DAYS, I MAY RESCIND THIS AGREEMENT BY DISCONTINUING MY EMPLOYMENT WITH MERRILL LYNCH WITHOUT ANY OF THE PROVISIONS HEREIN BEING ENFORCED AGAINST ME. TO THE CONTRARY, HOWEVER, IF I CONTINUE MY EMPLOYMENT WITH MERRILL LYNCH BEYOND SAID THIRTY DAYS, MY CONTINUATION OF EMPLOYMENT WILL CONSTITUTE MY RATIFICATION AND COMPLETE ACCEPTANCE OF THE TERMS OF THIS AGREEMENT.

Date:   _11-11-97_

Financial Consultant

Date:   _12/7/97_

For Merrill Lynch, Pierce, Fenner & Smith Inc.

# EXHIBIT C

MERRILL LYNCH, PIERCE, FENNER & SMITH INC.


# COMPLIANCE OUTLINE
# FOR
# PRIVATE CLIENT FINANCIAL ADVISORS

### JANUARY 2002

This outline is a reminder and quick reference source. It does not replace the *Merrill Lynch & Co. Policy Manual*, the *Branch Office Policy Manual*, the *Procedures Manual for Branch Offices* or other more detailed sources. It is intended to help Financial Advisors avoid situations that can lead to complaints, regulatory problems or adverse publicity.

**You are required to review the outline and acknowledge your understanding of its contents annually.**

**IF YOU HAVE QUESTIONS ABOUT THIS MATERIAL OR OTHER COMPLIANCE RELATED ISSUES, PLEASE CONSULT WITH YOUR MANAGER OR COMPLIANCE OFFICER.**

## SIGNING DOCUMENTS FOR CLIENTS OR OTHERS PROHIBITED

**You may never**

- sign a client's or any other person's name to a document, regardless of intent,

- ask or allow another person to sign a document in the place of someone else (e.g., one joint account party signing for the other),

- accept documents you believe to have been signed in such a manner, or

- accept or maintain blank LOAs or documents signed by a client for future transactions.

## PRIVACY POLICY – CONFIDENTIALITY OF CLIENT INFORMATION

Merrill Lynch protects the confidentiality and security of client information. Employees must understand the need for the careful handling of this information. Merrill Lynch's privacy policy provides that

- We do not sell or rent clients' personal information.

- Employees may not discuss the business affairs of any client with any other employee, except on a strict need-to-know basis.

- We do not release client information, except upon a client's authorization or when required by law.

- Third-party service providers with access to client information are subject to the Merrill Lynch Privacy Policy.

Questions concerning the confidentiality or security of client information should be directed to your manager, Compliance Officer, or the Office of General Counsel.

## TAX ADVICE

You may not advise clients on tax issues. Clients seeking tax guidance should be advised to consult a qualified tax advisor. This does not prohibit the dissemination of general tax information included in Firm material prepared for that purpose.

## BLUE SKY LAWS

You must ensure, prior to recommending a purchase, that the security is qualified in the **client's state of residence**. NYSE or ASE-listed securities are generally qualified in all states. Most states permit solicitation of orders for non-qualified securities (as principal or agent) from certain institutional accounts. To verify the Blue Sky status of a security, access the SMI page in the Markets Book on TGA or call the Blue Sky Unit in Compliance.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.

ANNUAL REVIEW OF COMPLIANCE OUTLINE
INSURANCE COMPLIANCE
OUTSIDE INTEREST QUESTIONNAIRE
ANNUAL COMPLIANCE MEETING
ANNUAL REVIEW OF MONEY LAUNDERING TAPE

Office Location: _Miami  Biscayne_

Wire Call: _FI_

Prefix: _748_

_Peter Foley_
Director/Managing Director/RD

As required by Merrill Lynch policy and NASD Article III, Section 27,
this office has:

(1) Provided to each of its Financial Advisors a copy of the
Compliance Outline and received acknowledgment of its review.

(2) Provided to each of its insurance licensed field personnel a copy
of the Insurance Compliance Policy Manual and received
acknowledgment of its review.

(3) Required all registered employees and officers to complete Outside
Interest Questionnaires. All positive responses have been
reviewed by me or my designee and then sent to the Compliance
Department for approval.

(4) Held a "Compliance Meeting" with the appropriate office personnel
including Financial Advisors for the purpose of discussing
questions with regard to the Outline and Compliance subjects in
general.

(5) All new Employees, Financial Advisors, and Administrative
Assistants have viewed the Money Laundering Tape.

Director/Managing Director/RD Signature

_12·7·04_
Date of Meeting

1/28/04

**COMPLIANCE MEETING**
**MIAMI BISCAYNE**

**December 7, 2004**

| # | PRINT NAME | SIGN HERE | # | PRINT NAME | SIGN HERE |
|---|---|---|---|---|---|
| 1 | MARIA GODOYA | | 26 | Scott Wilson | |
| 2 | ZOILA LORED DE KIUA | | 27 | Chris Brunk | |
| 3 | Frank DuMond | | 28 | Anthony Fernandez | |
| 4 | Ken Bruce | | 29 | JC Couso | |
| 5 | WUNDEREICH mark | | 30 | Roberto Cuccias | |
| 6 | Juan Cook | | 31 | Diana A Lopez | |
| 7 | Robert Polis | | 32 | Enos Sanchez | |
| 8 | Johanne Nobles | | 33 | Frank Dwyer | |
| 9 | Renecos Rendmeer | | 34 | Edvardo Cardenas | |
| 10 | Guillaume Killenam | | 35 | Thomas J Zauer | |
| 11 | Ricky Katzen | | 36 | Julius B Ganlson | |
| 12 | Rafael Fernandez | | 37 | De Morris | |
| 13 | Alfredo Diez | | 38 | Steve Meluzman | |
| 14 | Siulin Kang | | 39 | C. Morale | |
| 15 | Jorge Espinosa | | 40 | Raptel Avaliz-7 | |
| 16 | Nicole Cruce | | 41 | Jesus Gonzalez | |
| 17 | Carolina Alvino | | 42 | Sandra Brooks | |
| 18 | Mm Parker | | 43 | Francisco Feinada | |
| 19 | Melanie Eggens | | 44 | Jones A Viso | |
| 20 | Greg Clark | | 45 | | |
| 21 | Denis Amodio | | 46 | | |
| 22 | Daniel Moore | | 47 | | |
| 23 | Michael D. Wilson | | 48 | Armando D Silva | |
| 24 | Jowell Fanfani | | 49 | | |
| 25 | William Brish | | 50 | | |

# EXHIBIT D

 **Merrill Lynch**

**Conflict of Interest**

To:  Human Resources Department

1.  This is to acknowledge my awareness of the Merrill Lynch policy which states that I must not maintain a security and/or commodity investment account in any category with any other firm, and that I will immediately terminate any such accounts.  This applies to accounts which I have a direct or indirect interest or over which I exercise control.

    I also understand that I must have prior written approval to participate in:

    • outside employment which presents a conflict of interest with my position at Merrill Lynch.

    • directorships in private corporations (public corporate directorships are strictly prohibited).

    • private investments in securities which can not be purchased through stock exchange(s) member firms or a bank.

    • outside speaking and writing activities related to the securities and/or commodities business.

2.  I agree that I will not, during or after my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch.

    I agree to disclose to Merrill Lynch promptly any and all inventions and copyrightable material that are made by me during my employment and agree that they shall be the exclusive property of Merrill Lynch.  I will, during and after my employment with Merrill Lynch, without charge by me, but at Merrill Lynch's sole expense, sign and deliver all writings and perform all acts required in order to vest in Merrill Lynch all rights in all such inventions and copyrightable material and in order for Merrill Lynch to make and prosecute patent applications and to secure it's copyright rights.

3.  I have read and agree to abide by this statement of Merrill Lynch & Co. policy.  I also understand completion of this form is a condition of employment.

_____
Initials

_____5/5/95_____
Date


**Merrill Lynch**

**Conflict of Interest**

To:  Human Resources Department

1.  This is to acknowledge my awareness of the Merrill Lynch policy which states that I must not maintain a security and/or commodity investment account in any category with any other firm, and that I will immediately terminate any such accounts. This applies to accounts which I have a direct or indirect interest or over which I exercise control.

   I also understand that I must have prior written approval to participate in:
   * outside employment which presents a conflict of interest with my position at Merrill Lynch.
   * directorships in private corporations (public corporate directorships are strictly prohibited).
   * private investments in securities which can not be purchased through stock exchange(s) member firms or a bank.
   * outside speaking and writing activities related to the securities and/or commodities business.

2.  I agree that I will not, during or after my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch.
   I agree to disclose to Merrill Lynch promptly any and all inventions and copyrightable material that are made by me during my employment and agree that they shall be the exclusive property of Merrill Lynch. I will, during and after my employment with Merrill Lynch, without charge by me, but at Merrill Lynch's sole expense, sign and deliver all writings and perform all acts required in order to vest in Merrill Lynch all rights in all such inventions and copyrightable material and in order for Merrill Lynch to make and prosecute patent applications and to secure it's copyright rights.

   ___Anthony  Fernandez___        ___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___        _____
   Print Name                       Social Security #              Signature

3.  I have read and agree to abide by this statement of Merrill Lynch & Co. policy. I also understand completion of this form is a condition of employment.

   ___A.F.___        ___11/11/97___
   Initials              Date

## GUIDELINES FOR BUSINESS CONDUCT

I have been given the Guidelines for Business Conduct brochure which explains in some detail the basic tenets of Merrill Lynch's commitment to the highest standards of business conduct. I acknowledge that I have read and understand the guidelines, Merrill Lynch's commitment, and will work actively to keep it. By signing this document, I accept the obligation to follow the guidelines.

   ___A.F.___        ___11/11/97___
   Initials              Date

## INFORMATION PROTECTION POLICY STATEMENTS

I have read the Merrill Lynch Information Asset Protection Policy Statements in the Employee Information Booklet, understand their contents and intent, and agree to adhere to them while I am employed by the Firm and after I leave. I understand that misuse of the Firm's information assets constitutes an infraction of policy and that failure to comply with these policies and their supporting standards may result in my immediate discharge without prior warning and that the Firm may seek civil or criminal penalties.

   ___A.F.___        ___11/11/97___
   Initials              Date

   ___Anthony  Fernandez___        ___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___        _____
   Print Name                       Social Security #              Signature

# EXHIBIT E

## *Integrity*

*Our most important corporate asset is the great Merrill Lynch "tradition of trust" — our company's long-standing reputation for integrity in the marketplace. As beneficiaries of this great tradition, we will be tolerant of ordinary mistakes made in the course of business; we will not tolerate lapses in ethics or integrity.*

# A MESSAGE FROM THE CHAIRMAN AND VICE CHAIRMAN

This booklet has been prepared to make you and all the employees of Merrill Lynch & Co., Inc. and its subsidiaries aware of our company's commitment to the highest standards of business conduct. It is designed to enlist your *personal* commitment to these standards. The responsibility for maintaining Merrill Lynch's reputation for integrity, our most important corporate asset, rests with each of us.

This shared commitment is the foundation of the Merrill Lynch Principles, which not only underlie our success as a business and as individuals, but also define who we are and what we stand for.

David H. Komansky

Stephen L. Hammerman

# INTRODUCTION

Merrill Lynch is built on a foundation of trust — the trust of our clients, shareholders, regulators, and the general public. Maintaining this trust is the first obligation of every Merrill Lynch employee.

A critical first step is to observe the laws of each nation in which we operate. To ensure that we do so, we have established detailed policies and compliance procedures. These policies and procedures are set forth in detail in the *Merrill Lynch Policy Manual*, which contains more complete explanations of specific policies. Every department has a *Merrill Lynch Policy Manual* available for employee review.

It is not enough simply to obey the law. We must also act and behave in a manner that enhances our reputation and strengthens the trust that others have in our company. By adhering to exemplary standards of integrity, we enhance our reputation and our ability to do business.

We hope these guidelines will promote greater awareness and understanding of our ethical responsibilities. We must recognize, however, that no written code of ethics can ever guarantee adherence to high standards. This can be accomplished only if each of us undertakes daily to protect and enhance Merrill Lynch's most important corporate asset — our reputation for integrity.

2

# SAFEGUARDING THE ASSETS AND PROPERTY OF MERRILL LYNCH, OUR CLIENTS, AND OUR SHAREHOLDERS

Merrill Lynch is committed to maintaining and enforcing a strong, effective system of internal controls to safeguard and preserve the assets of our clients and our company. These administrative and accounting control systems are mandated by law and are the responsibility of each group in the Merrill Lynch organization and the management responsible for those groups. The cooperation of each and every employee is necessary for the systems to be effective.

All business transactions require authorization at an appropriate management level. Any employee who is responsible for the acquisition or disposition of assets for the company, or who is authorized to incur liabilities on the company's behalf, must be careful not to exceed his or her vested authority. Equally important, every employee must help ensure that all business transactions are executed as authorized.

Transactions must be properly reflected on the company's books and records. Every employee is involved, if not in the authorization or execution of business transactions, in some level or kind of reporting. This may include reporting travel and entertainment expenses or recording work hours on a time card. It is important that all reporting be done honestly and accurately and that employees cooperate fully with both internal and independent audits.

Merrill Lynch's assets include more than capital; they also include its facilities, equipment, information, technology, business plans, ideas for new products and services, trade secrets, inventions, copyrightable materials, and client lists. It is critical that all employees safeguard such assets in accordance with corporate policies. Employees are expected to use company assets only for the purposes intended — never for their own personal benefit, except when particular assets are approved for general employee or public use. This policy extends even to business opportunities that come to employees as a result of their employment. These are considered proprietary opportunities belonging to Merrill Lynch. Employees should be aware that state and federal laws, regulatory controls, and contractual and licensing obligations for such assets govern our actions as well as the actions of the company's vendors and consultants.

*All employees are responsible for safeguarding the assets of our clients and our company by acting in accordance with our internal control systems, designed to ensure that business transactions are properly authorized and carried out and also that all reporting is truthful and accurate.*

8

# PROPER USE OF INFORMATION

*Merrill Lynch employees with access to non-public information must keep this information confidential and ensure that it is not used improperly for personal gain or any other reason.*

In the conduct of our business, Merrill Lynch and its employees receive a great deal of non-public information. Much of this information may be sensitive — with a potential impact on market conditions, negotiations, strategic positioning, or relationships with clients, competitors, or vendors. It is essential, therefore, that we maintain confidentiality and ensure that such information is used only for appropriate purposes.

Securities laws specifically prohibit disclosure of non-public information to others. Merrill Lynch's policy is to limit disclosure of such confidential information to those with a need to know. Non-public information must not be passed on to employees who are not directly involved in a project or to family members (including spouses), friends, clients, or others.

Securities laws further prohibit any trading in a security by a person in possession of material non-public information affecting that security. Our employees are not permitted personally to benefit from advance knowledge. At times, this may put some of our employees at a disadvantage in the marketplace. Anyone with ongoing possession of non-public information may be unable to trade personally in the securities of the companies about which he or she has non-public information.

Similarly, employees should also refrain from acting on information concerning publicly traded securities received in their individual capacities if there is reason to believe the information is derived from non-public sources.

The policies on inside information are not limited to the securities area. All employees must exercise equal care not to misuse any non-public corporate information, including client lists, information about Merrill Lynch personnel, and business plans and ideas.

For additional guidance in specific situations, you should consult the Office of General Counsel.

**Merrill Lynch**                                    GUIDELINES FOR BUSINESS CONDUCT

I have been given the Guidelines for Business Conduct brochure which explains in some detail the basic tenets of Merrill Lynch's commitment to the highest standards of business conduct. I acknowledge that I have read and understand the guidelines, Merrill Lynch's commitment, and will work actively to keep it. By signing this document, I accept the obligation to follow the guidelines.

## INFORMATION ASSET PROTECTION POLICY

I have read the Merrill Lynch Information Asset Protection Policy Statements in the Employee Information Booklet, understand their contents and intent, and agree to adhere to them while I am employed by the Firm and after I leave. I understand that misuse of the Firm's information assets constitutes an infraction of policy and that failure to comply with these policies and their supporting standards may result in my immediate discharge without prior warning and that the Firm may seek civil or criminal penalties.

_____                    _5/5/95_____
Initials                                      Date

# Merrill Lynch

**Conflict of Interest**

To:  Human Resources Department

1. This is to acknowledge my awareness of the Merrill Lynch policy which states that I must not maintain a security and/or commodity investment account in any category with any other firm, and that I will immediately terminate any such accounts.  This applies to accounts which I have a direct or indirect interest or over which I exercise control.

   I also understand that I must have prior written approval to participate in:
   • outside employment which presents a conflict of interest with my position at Merrill Lynch.
   • directorships in private corporations (public corporate directorships are strictly prohibited).
   • private investments in securities which can not be purchased through stock exchange(s) member firms or a bank.
   • outside speaking and writing activities related to the securities and/or commodities business.

2. I agree that I will not, during or after my employment with Merrill Lynch, use or disclose to another any confidential information or business secrets relating to Merrill Lynch.
   I agree to disclose to Merrill Lynch promptly any and all inventions and copyrightable material that are made by me during my employment and agree that they shall be the exclusive property of Merrill Lynch.  I will, during and after my employment with Merrill Lynch, without charge by me, but at Merrill Lynch's sole expense, sign and deliver all writings and perform all acts required in order to vest in Merrill Lynch all rights in all such inventions and copyrightable material and in order for Merrill Lynch to make and prosecute patent applications and to secure it's copyright rights.

   _Anthony Fernandez_            _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_            _[signature]_
   Print Name                     Social Security #                 Signature

3. I have read and agree to abide by this statement of Merrill Lynch & Co. policy.  I also understand completion of this form is a condition of employment.

   _A.F._            _11/11/97_
   Initials                Date

## GUIDELINES FOR BUSINESS CONDUCT

I have been given the Guidelines for Business Conduct brochure which explains in some detail the basic tenets of Merrill Lynch's commitment to the highest standards of business conduct.  I acknowledge that I have read and understand the guidelines, Merrill Lynch's commitment, and will work actively to keep it.  By signing this document, I accept the obligation to follow the guidelines.

   _A.F._            _11/11/97_
   Initials                Date

## INFORMATION PROTECTION POLICY STATEMENTS

I have read the Merrill Lynch Information Asset Protection Policy Statements in the Employee Information Booklet, understand their contents and intent, and agree to adhere to them while I am employed by the Firm and after I leave.  I understand that misuse of the Firm's information assets constitutes an infraction of policy and that failure to comply with these policies and their supporting standards may result in my immediate discharge without prior warning and that the Firm may seek civil or criminal penalties.

   _A.F._            _11/11/97_
   Initials                Date

   _Anthony Fernandez_            _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_            _[signature]_
   Print Name                     Social Security #                 Signature

**JS 44**
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of the Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **CIV - LENARD** <br> Merrill Lynch, Pierce, Fenner & Smith, Inc. | Juan Carlos Collar <br> Anthony Fernandez *MAGISTRATE JUDGE SIMONTON* |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   NY, NY
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

05-20282

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
Douglas T. Marx, Esq.
Waldman Feluren Hildebrandt & Trigoboff, P.A.
2200 North Commerce Parkway, Suite 202
Weston, Florida 33326 (954) 467-8600

ATTORNEYS (IF KNOWN)
Brian S. Hamburger, Esq.
Hamburger Law Firm
745 Queen Anne Road
Teaneck, New Jersey 07666
(201) 692-1988

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE   MONROE   BROWARD   PALM BEACH   MARTIN   ST. LUCIE   INDIAN RIVER   OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

1:05 CV 20282 Lenard-Simonton

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated or Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (Specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgments <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted Student Loans Excl. Veterans <br> ☐ 153 Recovery of Overpayment Of Veterans Benefits <br> ☐ 160 Stockholders Suits <br> ☒ 190 Other Contract <br> ☐ 195 Contract Product Liability | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault Libel & Slander <br> ☐ 330 Federal Employers Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury | **PERSONAL INJURY** <br> ☐ 362 Personal Injury - Med. Malpractice <br> ☐ 365 Personal Injury - Product Liability <br> ☐ 368 Asbestos Personal Injury Product Liability <br><br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal Property Damage <br> ☐ 385 Property Damage Product Liability | ☐ 610 Agriculture <br> ☐ 620 Other Food & Drug <br> ☐ 625 Drug Related Seizure Of Property 12 USC 881 <br> ☐ 630 Liquor Laws <br> ☐ 640 R R & Truck <br> ☐ 650 Airline Regs <br> ☐ 660 Occupational Safety/Health <br> ☐ 690 Other | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal 28 USC 157 <br><br> **A PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 840 Trademark | ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce/ICC Rates etc <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influences and Corrupt Organizations <br> ☐ 810 Selective Service <br> ☐ 850 Securities/Commodities Exchange <br> ☐ 875 Customer Challenge 12 USC 3410 <br> ☐ 891 Agricultural Acts <br> ☐ 892 Economic Stabilization Act <br> ☐ 893 Environmental Matters <br> ☐ 894 Energy Allocation Act <br> ☐ 895 Freedom of Information Act <br> ☐ 900 Appeal of Fee Determination Under Equal Access Justice <br> ☐ 950 Constitutionality of State Statute <br> ☐ 890 Other Statutory Actions A or B |
| | | | **A LABOR** | **B SOCIAL SECURITY** | |
| | | | ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor Mgmt Relations <br> ☐ 730 Labor Mgmt Reporting & Disclosure Act <br> ☐ 740 Railway Labor Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl Ret Inc Security Act | ☐ 861 HIA <br> ☐ 862 Black Lung 923 <br> ☐ 863 DIWC D WW 1405 <br> ☐ 864 SSID Title XVI <br> ☐ 865 RS <br><br> **FEDERAL TAX SUITS** <br> ☐ 870 Taxes US Plaintiff or Defendant <br> ☐ 871 IRS Third Party 26 USC 7609 | |

| A REAL PROPERTY | A CIVIL RIGHTS | PRISONER PETITIONS |
|---|---|---|
| ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence <br> **HABEAS CORPUS** <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATE OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Claim for breach of contract and injunctive relief based on diversity, 28 U.S.C. 1332

LENGTH OF TRIAL
via   1   days estimated (for both sides to try entire case)   29 U.S.C. §1001 et. seq. - ERISA preemption

| VII. REQUESTED IN COMPLAINT: | DEMAND $ | CHECK YES only if demanded in complaint |
|---|---|---|
| CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23 | | JURY DEMAND: ☐ YES  ☒ NO |

**VIII. RELATED CASE(S)** (See Instructions)
IF ANY   JUDGE _____   DOCKET NUMBER _____

DATE   1-31-05

SIGNATURE OF ATTORNEY OF RECORD

AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44
Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of the Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of the Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      **(a) Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there ar several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P. which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the Untied States are included here.

Untied States defendant (2) When the plaintiff is suing the United States, its officers or agencies, plan an "X" in this box.

Federal Question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of Citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Origin.** Plan an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the Untied States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

V.      **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, selection the most definitive.

VI.     **Cause of Action.** Report the civil statute directly relating to the cause of action and give a brief description of the cause.

VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and corresponding judge names for such cases.